UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

WARRIOR ENERGY SERVICES CORP.                CIVIL ACTION NO. 09-cv-1600

VERSUS                                                            JUDGE STAGG

WELLMASTER CONSULTING, INC.                MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Warrior Energy Services Corporation ("Plaintiff") filed this diversity action against three Michigan companies that are alleged to owe Plaintiff more than $250,000 in principal and interest for well services Plaintiff performed on some Michigan wells. Defendants, in response to the Amended Complaint (Doc. 14), which restated and supplanted the original complaint, filed a Motion to Dismiss (Doc. 18) that asserts a lack of personal jurisdiction and requests, in the alternative, a change of venue to the Western District of Michigan. It is recommended, for the reasons that follow, that the motion be granted.

**Basic Principles of Personal Jurisdiction**

The Louisiana long arm statute, which this federal diversity court must apply, extends as far as is permitted by due process. Patin v. Thoroughbred Power Boats Inc., 294 F.3d 640 (5th Cir. 2002). The exercise of personal jurisdiction over a defendant comports with due process only if (1) the defendant has purposefully availed himself of the benefits and protections of Louisiana by establishing "minimum contacts" with Louisiana and (2) the

exercise of personal jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice. Allred v. Moore & Peterson, 117 F.3d 278, 285 (5th Cir. 1997).

Minimum contacts with Louisiana may arise incident to the federal court's general or specific jurisdiction over the non-resident. General jurisdiction is invoked where the non-resident maintains continuous and systematic contacts with Louisiana. Specific jurisdiction is appropriate only when the nonresident's contacts with Louisiana arise from, or are directly related to, the cause of action asserted by the plaintiff. Lewis v. Fresne, 252 F.3d 352, 358 (5th Cir. 2001).

On a pretrial motion such as this one where no evidentiary hearing is held, the uncontroverted allegations in the plaintiff's complaint must be taken as true, and any conflicts between facts contained in the parties' affidavits must be resolved in the plaintiff's favor. Bullion v. Gillespie, 895 F.2d 213, 217 (5th Cir. 1990). Those facts must create for the plaintiff a prima facie showing of jurisdiction. Travelers Indemnity Co. v. Calvert Fire Ins. Co., 798 F.2d 826, 831 (5th Cir. 1986). If the plaintiff satisfies that minimal standard, he must still prove the jurisdictional facts at trial or through hearing by a preponderance of the evidence before he may obtain relief on the merits against the non-resident. Id.; Felch v. Transportes Lar-Mex, 92 F.3d 320, 326 (5th Cir. 1996).

**Relevant Facts**

Plaintiff Warrior is a Delaware corporation that does business in Louisiana. That business includes supplying products and services to onshore and offshore oil facilities.

Amended Complaint, ¶¶ 1 and 11.  The three defendants are WellMaster Consulting, Inc.; WellMaster Production Company, LLC; and Oceana Production Company, LLC.  Each is a Michigan company.  ¶¶ 2-4.  Plaintiff alleges that the three defendant companies are alter egos of each other and operate as a single business enterprise.  ¶ 5.  An affidavit from the CEO of the Michigan companies contests that allegation with testimony that the companies are separate and distinct, with separate books and records and separate assets and liabilities.  Affidavit of John Randell, ¶¶ 6-9.  The alter ego allegations in the complaint have thus been controverted, and Plaintiff has not responded with a competing affidavit that would require resolution of the issue in its favor.  Accordingly, the alter ego allegation is not a fact accepted for the personal jurisdiction analysis.

    Mr. Randell testifies that the only contact he ever had with Plaintiff was through email or telephone.  Randell Affidavit, ¶ 17.  Plaintiff alleges that this contact began in early 2008 when Randell contacted Plaintiff at its Shreveport, Louisiana office to solicit Plaintiff's services for certain wells in Michigan.  Randell told Plaintiff that he represented "WellMaster" and he "repeatedly contacted" Plaintiff's representatives in Louisiana by telephone and email to solicit and secure a bid for the work.  Amended Complaint, ¶¶ 14-16.  Randell provided information about WellMaster Production to establish that it was creditworthy.  ¶ 17.  Based on that credit history, Plaintiff permitted WellMaster Production to establish an open account.  ¶ 18.

These actions culminated in Plaintiff traveling to Michigan in February 2008 to service a well. Dale Seekford, an official with Plaintiff, testifies that the project took about five days, which included one day in Louisiana preparing, assembling, and loading the necessary equipment and supplies for the project. Two days were spent in transportation between Louisiana and Michigan, and two days were spent on-site in Michigan performing the work. Seekford Affidavit, ¶ 5.

Mr. Randell contacted Mr. Seekford again, which led to a similar six-day trip to Michigan, with about two days on-site at the Michigan well. Once again, Plaintiff's employees prepared, assembled, and loaded necessary equipment in Louisiana in preparation for the job. Seekford Affidavit, ¶ 8.

Plaintiff alleges that it presented WellMaster Production with a field ticket for each of the two jobs it performed. It has not been paid the amounts due. Plaintiff alleges causes of action ranging from breach of contract and open account to unjust enrichment and intentional misrepresentation, all directed at collecting the amount due for its work.

**Analysis**

Plaintiff does not argue that it is proper to exercise general jurisdiction over any defendant. Rather, it focuses on specific jurisdiction based on the contract-related contacts between the Michigan defendants and Louisiana. The rules regarding a minimum contacts analysis in the context of a contract dispute are, as with all personal jurisdiction issues, not susceptible to a mechanical test. The only thing that can be said with certainty is that an

out-of-state party's contract with a person in Louisiana does not automatically establish sufficient minimum contacts for this court to exercise jurisdiction over that party. Burger King Corp. v. Rudzewicz, 105 S.Ct. 2174, 2185 (1985). In a contract setting, the court must employ a "highly realistic" approach that recognizes the contract is just an intermediate step that ties up prior business negotiations and has future consequences that are the real object of the business transaction. "It is these factors – prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing – that must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum." Id.

The Fifth Circuit has examined a number of claims to specific jurisdiction based on a contract between a resident plaintiff and a non-resident defendant. During the course of those decisions, it has "repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant." Freudensprung v. Offshore Technical Services, Inc., 379 F.3d 327, 344 (5th Cir. 2004). Even when there were what were described as "significant communications - including sales orders and commission payments - " between the nonresident and the forum state, the contacts have been deemed insufficient. McFadin v. Gerber, 587 F.3d 753, 760 (5th Cir. 2009).

Plaintiff has not shown that any defendant had any more contacts with Louisiana than the defendants in the several cases where the Fifth Circuit has dismissed for lack of personal jurisdiction. Plaintiff relies heavily on Mississippi Interstate Express, Inc. v. Transpo, Inc., 681 F.2d 1003 (5th Cir. 1982), but the parties in that case had a sustained contractual relationship in which the forum state was "clearly the hub of the parties' activities." Transpo, 681 F.2d at 1011. The case also arose in the context of interstate trucking, where there was no "clear local nexus with any particular jurisdiction." Id. That is not the case here. Michigan was the hub of activities where all of the actual work was performed. See McFadin, 587 F.3d at 761 (distinguishing Transpo for similar reasons).

Plaintiff also points out that it had to load its equipment in Louisiana for each of the two trips it made to Michigan. That mere occurrence is not evidence of any defendant purposely directing its activities toward Louisiana or purposefully availing itself of the privilege of conducting activities in Louisiana. Plaintiff has not met its burden of establishing a prima facie case that any one of the three defendants had minimum contacts with Louisiana sufficient to permit the exercise of personal jurisdiction over the Michigan defendants in connection with the claims asserted in the amended complaint.

**Dismiss or Transfer**

Once a district court determines that it lacks personal jurisdiction over the defendants, it is within its discretion to transfer the case to a court of proper jurisdiction and venue. Caldwell v. Palmetto State Sav. Bank of South Carolina, 811 F.2d 916, 919 (5th Cir. 1987);

Bentz v. Recile, 778 F.2d 1026 (5th Cir. 1985). Plaintiff has not responded to Defendants' alternative request for transfer of venue other than to insist that venue in Louisiana is proper and "this case should not be transferred." Doc. 22, p. 16.

If a plaintiff faced with a motion to dismiss for lack of personal jurisdiction asks for a transfer in the event it does not prevail, the court is ordinarily willing to honor that request. It avoids potential limitations defenses that might arise if the first case is dismissed without prejudice, and it saves the expense and delay of commencing and serving a new civil action in another forum. However, when the plaintiff does not request such a transfer, the court does not ordinarily do so sua sponte and burden the transferee court with a case that the plaintiff might not really be willing to litigate in the distant forum. Plaintiff has not made a request for transfer in this case, so dismissal is recommended.

Accordingly,

**IT IS RECOMMENDED** that the **Motion to Dismiss (Doc. 18)** be **granted** and that all claims against all defendants be **dismissed without prejudice** for lack of personal jurisdiction.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another

party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 10th day of June, 2010.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE